[Department Two. — May 15th, 1883.]

## WILLIAM TRENOUTH, APPELLANT, v. L. B. GILBERT ET AL., RESPONDENTS.

STATUTE OF LIMITATIONS — TENANTS IN COMMON — TRUST — FINDINGS — EVIDENCE. — In an action between tenants in common of real estate to establish a trust in favor of the plaintiff as the equitable owner of an undivided interest, the legal title having been acquired by the defendants, and the Statute of Limitations being pleaded in bar of the action, the court found in substance that the cause

of action accrued more than four years before the commencement of the action, and that there had been a continuous adverse possession by the defendants for more than five years prior thereto. *Held,* on a review of the evidence, that it was insufficient to support the finding as to the adverse possession of the defendants.

ID.—PURCHASE FROM TENANTS IN COMMON.—Certain findings in relation to a purchase of the interests of some of the tenants in common by the defendants and their grantors while in possession holding adversely, examined by the court, and their effect determined with reference to the statute.

APPEAL from a judgment of the Superior Court of the city and county of San Francisco, and from an order refusing a new trial.

The action was brought to establish a trust, and for other relief in connection therewith. The additional facts, so far as they bear upon the points decided, appear in the opinion of the court.

*J. B. Townsend,* and *McClure & Dwinelle,* for Appellant.

*John Reynolds, M. G. Cobb, C. N. Fox,* and *Arthur Rodgers,* for Respondents.

SHARPSTEIN, J.—Unless his cause of action is barred by the Statute of Limitations, the plaintiff is entitled to a part of the relief prayed in his complaint. By the deeds of Maria Louisa and Juan B. Buelna, plaintiff acquired whatever right or interest they had in the rancho San Gregorio, at the date of said deeds. They never had more than an undivided fifth interest in said rancho, and previously to their conveyance to the plaintiff they had conveyed all their interest in four thousand acres of said rancho to one Hamilton. So that the interest conveyed to the plaintiff is not more than an undivided one fifth of the residue of said rancho. In 1839 said rancho was granted by the Mexican government to Antonio Buelna, who in 1842 made a will by which he devised the entire rancho to his wife Maria Concepcion Valencia, Juan Bautista Buelna, and three others, share and share alike: that is, to each an undivided one fifth. In 1842 said Antonio died, leaving said will and all of said devisees surviving him. In 1846 said Juan Bautista died intestate leaving, him surviving, as his only heirs-at-law, the said Maria Louisa and Juan B. Buelna. After the death of her

husband said Maria Concepcion made a conveyance of one league of said rancho to one Castro; and in 1852 said Castro and said Maria Concepcion presented a petition to the board of land commissioners to have the claim of said Castro to one league, and the claim of said Maria Concepcion to the other three leagues, confirmed, and their said respective claims were accordingly confirmed, and patented to them in 1861. That they held the legal title to an undivided interest in said rancho in trust for the said Maria Louisa and Juan B. Buelna is too clear to admit of any doubt.

The court found that "the defendants, and those from and under whom they hold and claim the possession, have been in the open, notorious, and exclusive possession of the premises described in the complaint, holding separately, as stated in their several answers, claiming to own the same and to have the whole title thereto for more than five years next before the commencement of this action.

"The defendants, and those from and under whom they respectively hold and claim, more than five years before the commencement of this action, to wit, in the year 1857, being in possession respectively as aforesaid, acquired by purchase all the right, title, and interest of the patentees and all of the legatees under the said will of Antonio Buelna, except said Juan B. Buelna, to their respective portions of said land, and still hold and own the same.

"The plaintiff's cause of action arose and accrued to him more than four years before the commencement of this action; and the defendants and each of them had held all the land described in said complaint, claiming to own the title to the same, and in open and notorious hostility to the plaintiff's claim, and to any trust or equitable interest claimed by him for more than five years before the commencement of this action."

The evidence sustains the finding that the defendants and those under whom they claim were in possession of the premises in 1857, and that while so in possession "they acquired by purchase all the right, title, and interest of the patentees and of all the legatees under the will of Antonio Buelna, except said Juan B. Buelna, to their respective portions of said land, and still hold and own the same."

The court did not find that, prior to the purchase and acquisition of the interests of said patentees and devisees, the defendants, and those under whom they claim, had acquired title to said premises by an adverse possession of five years; and in the absence of such a finding, the finding that the defendants and those under whom they claim were in possession of the premises when they purchased the interests referred to is not of the slightest importance.   It does not appear that they had acquired any title to the premises before the date of said purchase, and the defendants occupy no stronger position than they would if they had gone into possession under said·purchase, and not otherwise.   It would be different if, at the date of said purchase, they had been in the adverse possession of the entire rancho for five years or more.   In that event they might have taken deeds from some of the tenants in common without affecting in any way the title acquired by an adverse possession of five years, as against other tenants.

As it is, they are bound to show that their possession since they purchased the interest of some of the tenants in common has been of such a character as to warrant a presumption of ouster of the other tenants, before they can successfully claim that they have acquired title as against the tenants, of whom they have not purchased, by an adverse possession of five years. "There must not only be an exclusive possession, but the possession must be under a claim to title to the whole estate either brought home to the knowledge of the other tenant, or so notorious that his knowledge of such adverse claim can be presumed. And the evidence must be much stronger than would be required to establish a title by possession by a stranger." (Wood on Limitation of Actions, 559.)

The only evidence tending to prove an adverse possession in this case is the testimony of one witness called by the defendants, who on his direct examination testified as follows :—

"I have been acquainted with the persons who have occupied the San Gregorio Ranch and with the extent of their occupation. The earliest period that I knew of its occupation was 1858 ; it was all occupied about 1858—as early as 1858.   Prior to that it was not all occupied.   Then, in 1858, it was occupied by parties living on it, fencing it up, and using it for farming and pas-

turing. The occupation has been continued ever since. I know all the defendants who have answered herein, personally, and the land described in their respective answers. This land has come down to them from those persons who were in occupation in 1858. That has been continuous. In 1858 they claimed to own the land occupied and possessed by them respectively. I know the tract occupied by defendant H. W. Seale. That tract was not within the four thousand-acre tract conveyed by Juan and Maria Louisa to Hugh Hamilton."

No other evidence was introduced to prove the character of the defendants' possession, and this evidence, considered in connection with the fact that the defendants were in possession under deeds conveying to them more than four fifths of the rancho, signally fails to establish an adverse possession of five years as against those who were tenants in common of the grantors of the defendants at the time of the execution of said deeds.

As was said in *Owen* v. *Morton*, 24 Cal. 373: "This testimony, taken together, falls short of establishing an adverse possession, and furnishes no evidence of an ouster of the plaintiff by the defendants."

The patentees and devisees who conveyed to the defendants did not attempt to convey any other or greater interest than they, said patentees and devisees, had in said rancho. They simply quit-claimed whatever interest they had, and nothing more.

Conceding, therefore, that the court found facts sufficient to establish such an adverse possession by the defendants as would bar the plaintiff's cause of action, it seems to us quite clear that the evidence is insufficient to support such a finding, and for that reason the judgment and order appealed from must be reversed.

Judgment and order reversed, and cause remanded for a new trial.

THORNTON, J., and MYRICK, J., concurred.

Hearing in Bank denied.