Dorsey v. Barry.

## G. T. DORSEY v. JOHN BARRY.

ELECTIONS — CONTESTING.—The statutory proceeding contesting an election is a special case, provided for by section nine of Article VI of the Constitution; wholly distinct in form and substantially different from the common law remedy.

JUDGMENT IN CONTESTED ELECTION.—Upon the entry of a judgment in a contested election case under the statute, the power of the Court over the cause ceases, and it cannot grant a new trial or re-examine the issues of law or fact.

SAME—APPEAL FROM.—An appeal lies from such judgment to the Supreme Court, which may, upon a reversal of the judgment, if it be found necessary or proper, order a new trial in the Court below.

APPEAL from the County Court, Tuolumne County.

The facts are stated in the opinion of the Court.

*Edwin A. Rodgers*, and *George Cadwalader*, for Appellant.

The Court below exhausted its authority when it entered its judgment confirming the election of Barry.   (Wood's Dig. 785, Sec. 69.)

This final judgment was rendered on the 6th of November, 1863, and ended the controversy, as well as the special term.

*H. P. Barber*, for Respondent.

The County Court is a Court of *record*.   (Wood's Dig. 157, Sec. 694.)

In Courts of record the power to grant new trials may, so far as the United States are concerned, be considered as a com-

mon law right, independent of statute, dating back even prior to the case of *Wood* v. *Gunston*, in 1655. (Sty. 462 ; *Rex* v. *Corp. of Bewdley*, 1 P. Wons. 207 ; 2 Gr. & Wat. on New Trials, 38.)

No *special* power is given to either the District or County Courts by our statute to grant new trials, except in providing the *means* necessary to attain that end. The general power, as to Courts of record, appears to be conceded by implication. (Wood's Dig. 192, Arts. 927, 928.)

The County Court, in these contested election cases, acts as *a Court*. The Judges of the Supreme Court of New York, on the contrary, in proceedings to open streets, act more as *quasi Commissioners* than as a Court. (2 Hill, 15, cited in the opinion.)

The Act in question refers to the County Court *as a Court*, and its only effect is not in any manner to limit the general powers of that Court, but simply to provide that contested election cases shall be tried there.

As regards the time of *appeal* from the judgment of the County Court, referred to in the opinion, it must be remembered that the old Act (Compiled Laws, 785, Sec. 69) provided for an appeal to the *District Court*, where the whole matter was retried.

We respectfully suggest that the County Court has the right, where it exercises its functions *as a Court*, to grant new trials *in all cases ;* that the object of the contested election Act was not to limit the power of the Court, but to provide a tribunal *where* such cases should be tried.

County *Judges* have the power to hear and determine motions for new trials *out of Court and at Chambers*. (Laws of 1861, Chap. 339, p. 199.)

Cases of alleged fraudulent insolvency are also " special proceedings" tried in the County Court, and the statute providing for such trial makes no provision for a new trial. (Wood's Dig. 499, Arts. 26, 67.) Yet, we imagine your honors would hesitate long, before deciding that the County Court could not grant a new trial in such cases.

By the Court, Rhodes, J.

Dorsey and Barry, and two other persons, were candidates at the general election of 1863 for the office of constable for Township No. 1, in Tuolumne County. The Board of Supervisors canvassed the election, and declared Barry and John Edwards duly elected as constables for said township. On the 23d day of October, 1863, Dorsey filed in the County Court of Tuolumne County his petition, contesting the election of Barry, and praying that he (Dorsey) might be declared elected in the place of Barry. A citation was issued to Barry to appear before the Court on the 2d day of November; and on that day, at a special term held for the hearing of said contested election case, the parties appeared before said Court, and the defendant filed his demurrer and answer, and the Court proceeded to hear said cause, and on the 6th day of November rendered judgment confirming the election of Barry. On the 10th of · November, Dorsey filed his notice of intention to move for a new trial, and on the 14th of November, the motion was heard and a new trial granted, and the hearing was ordered for the 30th day of November, to which day the cause was continued. It appears from the statement that "on the 11th day of December, 1863, the Judge of said Court opened said special term," and proceeded with the trial of said cause, and on the 13th of December the Court rendered judgment annulling the election of Barry as declared by the Board of Supervisors, and declaring Dorsey duly elected as constable.

Barry gave notice on the following day of a motion for a new trial, and the motion being denied, he gave notice on the 23d of December of an appeal · from the judgment and the order overruling the motion for a new trial.

After the entry of the judgment in favor of Barry, on the 6th of November, he objected, at each stage of the proceedings, to the further action of the Court in the premises. The proceedings were instituted and conducted under the provisions of the Act of 1850, and the amendments thereof (Wood's Digest, 380–2.) The cause is not one of which the

Court had jurisdiction by virtue of its organization, but it falls within the class of " special cases " provided for by section nine of Article VI of the Constitution, the jurisdiction of which may be conferred upon that Court by the Legislature. In *Sanders* v. *Haynes*, 13 Cal. 150, it is said that " the statute of 1850 creates a special proceeding wholly distinct in form and substantially different from the common law remedy." The Act itself provides a complete mode of procedure, leaving but little, if anything, dependent upon implication or the common law powers of the Court.

The written statement of contest, the filing of it in the Clerk's office, the fixing of the time of hearing, the process and its service, the attendance of witnesses, the continuances, the hearing by the Court, the fees of officers and witnesses, the liabilities of the parties therefor, the judgment for costs and the manner of collecting the same, the dismissal for insufficiency of the proceedings or for want of prosecution, the judgment and the appeal therefrom, are all specially provided for in the Act.    One of the usual rules of all Courts sitting in the trial of actions does not prevail here.    A judgment by default or *nil dicit* cannot be rendered.    The Court must proceed to hear the proofs and allegations of the parties, and without regard to the allegations of the contestant or the default of the defendant, if the contestant does not offer his proofs the proceedings must be dismissed.    (*Searcy* v. *Grow*, 15 Cal. 117.) No provision is made for taking depositions, nor for any of those proceedings which, in an action between parties, would result in delays and continuances.    In special proceedings, the Court vested with jurisdiction by the statute possesses only such powers as the Act creating the special case has conferred, and in the exercise of those powers it is limited by the terms of the Act.    (*Whitney* v. *Board of Delegates*, 14 Cal. 503.)

It is held also, in *Sanders* v. *Haynes*, that " the statute evidently intended to afford a new and summary remedy in cases of contested elections," and it is a cardinal rule, that in sum-

mary proceedings, the law must be strictly pursued.    (Sedgwick on Stat. and Const. Law, 319.)

In section sixty-two of the Act, provision is made for the continuance of the special term, not exceeding twenty days, upon good cause shown before the commencement of the trial; and it further provides that after the commencement of the trial it may be continued from day to day until such trial is ended.    The continuance in those two cases being provided for, all further power of continuance is excluded.

It is not directly asserted by counsel that the Court had authority to continue the cause otherwise than is provided for in that section, and it does not appear that the Court has assumed to exercise such authority.    The judgment was rendered on the 6th of November, and it does not appear from the record that on that day the Court continued the special term to a future day; and in the absence of proper evidence to the contrary, it will be presumed that the special term ended upon the entry of the judgment; and, therefore, there was no special term of the Court at the time of the filing or hearing of the motion for a new trial, unless one had been created by the Court. Upon the entry of the judgment the power of the Court over the cause ceased, for the reason that the statute has not conferred upon it any further jurisdiction.    In *People* v. *Supervisors of Greene*, 12 Barb. 217, it was held that the power of the Board of Supervisors ended upon declaring the result of the election, and that they could not hold a further session to correct an error in the canvass, because they were not authorized to do so by the statute.    It will be observed that the statute does not authorize the Court to appoint a new term after the expiration of the term appointed upon the filing of the petition.    In special proceedings, the Court looks to the statutes alone for authority; and the question whether, in a given case, the Court can exercise any power or adopt any of the forms of procedure common to Courts of law, must be determined by the provisions of the statute conferring jurisdiction.    Thus, it is held that there can be no jury in special proceedings unless it is provided for in the statute.    (*Koppi-*

*kus* v. *State Capitol Commissioners*, 16 Cal. 248 ; *Beckman* v. *Saratoga and Schenectedy Railroad Company*, 3 Paige, 75 ; *Livingston* v. *Mayor of New York*, 8 Wend. 85.)

In proceedings to acquire the right of way, where it is provided that certain orders or judgments shall be final, and no appeal is provided, it is held that no appeal lies. (*Ex parte Ransom*, 3 Code R. 148 ; *New York Central Railroad Company* v. *Marvin*, 1 Kernan, 276.)

The new trial granted on the 14th of November was void, and of no effect for any purpose, unless the special term, in existence when the judgment of November 6th was rendered, .still continued ; and in our opinion, even in the event that the Court was still holding the special term, the order granting the petitioner's motion for a new trial was without authority, and void. The statute has not made provision for the re-examination of the issues of law or of fact in that Court, but has expressly provided for the taking of an appeal. It is said *In the Matter of Beekman Street*, 20 J. R. 269, and affirmed *In the Matter of Mount Morris Square*, 2 Hill, 14 ; 15 Barb. 37, and many other cases, that the Supreme Court, in revising, confirming, or setting aside reports of Commissioners of Streets appointed by them, derive their powers from the statutes under which they act, not as a Court, but as Commissioners. *In the Matter of Canal Street*, 11 Wend. 154, *In the Matter of Mount Morris Square*, 2 Hill, 14, and in *Visscher* v. *Hudson River Railroad Company*, 15 Barb. 37, the Court held that they could not reconsider their decisions confirming the report of Commissioners appointed by them, because the statute did not vest in them the jurisdiction to review their decisions. And in *People* v. *Supervisors of Greene*, the Court said that if they should, by mandamus, order the Supervisors to re-examine the election returns, the action of the Board would be void, for the Board was not vested with that power by the statute, though the error in the decision of the Board was apparent.

We are aware that it was held by the late Supreme Court that in special proceedings to contest elections the County

Court could grant a new trial.    The decision in that case
(*Dickinson* v. *Van Horn*, 9 Cal. 207) seems to have been
founded upon the provisions of section sixty-three of the Act
of 1850, to regulate elections, and upon the idea that the
appellate power of the Supreme Court could not be properly
exercised unless it could order a new trial in the County
Court, and that if the Supreme Court could so order, the
County Court must necessarily have that power without an
order from the Supreme Court.   In our opinion, section sixty-
three has no reference to the power to grant a new trial, nor,
indeed, to any proceeding that might be had after judgment,
as in a civil action.   The only portion of the section that can,
under any construction, be held to bear upon the question of
the authority to order a new trial is as follows :  " Such Court
shall be governed in the trial and determination of the con-
tested election by the rules of law and evidence governing
the determination of questions of law and fact, so far as the
same may be applicable."   This clause evidently means sim-
ply that questions of law and questions of fact arising in the
progress of the trial of the contested election shall be deter-
mined by the Court according to law ; and that evidence shall
be admitted and its effect determined by the rules of law gov-
erning the production and effect of evidence on the trial of an
action at law.

It does not necessarily follow that if the appellate Court
can order a new trial in the inferior Court, that the inferior
Court can, of its own motion, grant a new trial.   It will be
remembered that in the early history of the common law
Courts of England, the Court of Chancery directed a new
trial at law in those Courts, and it enforced its decree under
the penalty of a perpetual injunction if the adverse party
should refuse.   (1 Gra. & Wat. New Trials, p. 4.)

The power to grant new trials, and the mode of its exercise,
are dependent mainly, if not entirely, upon the statute, in
both civil and criminal actions.   The grounds upon which it
may be obtained, and the manner of applying for and procur-
ing it, are therein prescribed.

If the appellate power of a Court does necessarily include or imply the power to order a new trial, the Legislature might with propriety leave the exercise of that power to the appellate Court, and in cases like the one before us, which was intended to be a summary proceeding, the Legislature may well be supposed to have intended that the judgment of the County Court should be final, unless appealed from, and that the order for a new trial should proceed from the appellate Court upon a reversal of the judgment, if it should then be found necessary or proper. This would appear both reasonable and probable, upon examination of section 73. It is therein provided, that if an appeal be not taken from a judgment annulling an election within ten days, the commission or certificate, if issued, shall become void. If the contestant should desire to appeal from such a judgment, and it should be held necessary for him first to move for a new trial, prepare his statement, procure its settlement by the Court, and have the motion heard and determined by the usual course of proceeding in civil actions, it would be found that before his appeal could be taken from the order denying the new trial his certificate or commission had become void, and that he had been ousted from the office, through no default or neglect on his part, while proceedings were pending to try his right to the office.

Since the decision in *Dickinson* v. *Van Horn*, 9 Cal. 207, the late Supreme Court have more accurately ascertained and defined the character of the proceedings under the statute relating to contested elections, and, as already remarked in the cases before cited, they held them to be special proceedings, and in one case denominated them " summary proceedings." We regard them in every sense as special proceedings, and subject to the well settled rule, that in adjudicating upon them, the tribunal exercising jurisdiction must resort to the statute alone to ascertain its powers and mode of procedure.

Upon examination of the several provisions of the statute, and construing the proceedings under them by the well established rules applicable to special proceedings, our conclusions

are, that the judgment entered on the 6th day of November, not having been appealed from, was final; that the special term, not having been continued from day to day after that time, expired on that day; that thereafter the County Court had no jurisdiction of the proceedings, and that the order granting the petitioner's motion for a new trial was *coram non judice* and void.

The judgment appealed from is reversed, and it is ordered that all the proceedings subsequent to the entry of the judgment, on the 6th day of November, 1863, be set aside.